**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 13 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BRUCE HORTI; et al.,

    Plaintiffs-Appellants,

v.

NESTLE HEALTHCARE NUTRITION, INC.,

    Defendant-Appellee.

No. 22-16832

D.C. No. 4:21-cv-09812-PJH

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted December 6, 2023
San Francisco, California

Before: S.R. THOMAS, BRESS, and JOHNSTONE, Circuit Judges.

    Plaintiffs appeal the district court's dismissal of their putative class action against Nestle Healthcare Nutrition, Inc., which alleges violations of state consumer protection laws based on Nestle's allegedly deceptive labeling and marketing of BOOST Glucose Control products. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal under Federal Rule of Civil

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Procedure 12(b)(6).  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020).  We reverse and remand for further proceedings.

1. Plaintiffs have pleaded an injury sufficient to support Article III standing.  To show Article III standing, a plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  At the pleading stage, plaintiffs' complaint must sufficiently allege facts demonstrating each required element of Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs allege that they purchased a product they otherwise would not have bought but for defendant's alleged misrepresentations.  The purchase price itself is therefore a "tangible economic injury" and is sufficient at the pleading stage to show the plaintiffs "suffered actual, discrete, and direct injury in fact in the form of financial losses . . . ."  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855–56 (9th Cir. 2002).  Because the plaintiffs claim that they "spent money that, absent defendant['s] actions, they would not have spent," they have pleaded "a quintessential injury-in-fact" to support Article III standing.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  In addition, plaintiffs sufficiently alleged an injury in fact at the pleading stage through their price premium allegations.  Plaintiffs

2

fairly alleged that BOOST Glucose Control has a higher price than other comparable products and that plaintiffs chose to pay the premium based on Nestle's alleged misrepresentations.

2. Plaintiffs have sufficiently alleged that the representations on the BOOST Glucose Control label are likely to mislead a reasonable consumer. We evaluate the plaintiffs' theory of product deception under the reasonable consumer test, which requires plaintiffs to "demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). This standard "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)).

Nestle's product labels contain three relevant representations: the name "Glucose Control," the statement that the product is "designed for people with diabetes," and the claim that the product "helps manage blood sugar." We conclude that, at the pleading stage, these representations are sufficient to show that a reasonable consumer could expect the product to exert some benefit on the control and regulation of blood sugar. The labels specifically reference the disease of diabetes and claim to help consumers "control" glucose and "manage" blood sugar. A reasonable consumer could understand these representations to indicate that the

product will have a positive effect on diabetes and blood sugar levels. Nestle offers contrary interpretations of the product labels, but that disagreement is not appropriate for resolution on a motion to dismiss.

Further supporting the plausibility of plaintiffs' allegations and their claimed understanding of the product label is the fact that the product was placed in stores and on websites alongside legitimate diabetes treatments and other health and nutritional supplement products. Although Nestle argues that it did not control product placement in stores, that issue cannot be resolved on a motion to dismiss. Nestle's control over product placement is also irrelevant to the reasonableness of consumer perceptions, as alleged in the operative complaint. The products' placement in stores alongside legitimate diabetes treatments may create a "contextual inference[]" that the product may have a positive effect on the regulation of blood sugar. *Moore*, 4 F.4th at 882. Nor, at the pleading stage, can we draw conclusions as to whether the consumers who purchased BOOST Glucose Control were more knowledgeable about its potential health benefits or lack thereof.

**REVERSED AND REMANDED.**